**FAO FAMILY of Iliili, Plaintiff**

**v.**

**FAO V. of Iliili, Defendant**

# No. 39-1947

# High Court of American Samoa

### Civil Jurisdiction, Trial Division

[Matai Name: "Fao" of Iliili]

## October 13, 1947

---

### DECISION

Heard at Fagatogo October 8, 1947.
Tupua and Ioasa for the Fao family; Mase for Fao.

MORROW, *Chief Justice.*

Certain members of the Fao family of Iliili filed their petition for the removal of Fao V. from the title Fao. He resisted and asked for a hearing before the High Court.

■ Section 934 of the A. S. Code provides that:

"Whenever three-fourths of all adult persons in a family desire the removal of the matai and they so state their desires to the Registrar of Titles in writing, setting forth their reasons, a notice to that effect, containing all signatures shall be posted for thirty days in the usual manner. A copy of such notice will be furnished to the matai and upon his request he will be given a hearing on the subject before the High Court of American Samoa. If, within a reasonable time no hearing is requested by the matai, or if upon hearing no sufficient reason is shown to the Court why the matai should not be removed from office, such fact will be certified by the Court to the Registrar of Titles and the Registrar of Titles will remove the name of the matai under either procedure above contemplated and another matai shall be selected by the family concerned in the usual manner."

There were 103 signers on the petition for Fao's removal. There were 73 on his petition for retention as the matai of the family. The family objected to 22 names on the petition for Fao claiming they were not members of the family. Fao objected to 23 names on the petition against him claiming likewise that they were not members of the family. Fao also objected to 9 names on the family's petition because these 9 persons signed his petition also.

■ The statute (Sec. 934) as above quoted requires three-fourths of the adult persons in the family to petition for the removal of a matai before the court can determine that he should be removed. If we count out the 23 persons objected to by Fao as non-family members, there are only 80 left on the petition against him. And if we likewise count out the 22 on Fao's petition objected to as non-family members by the family there are still 51 left on his petition. 51 plus 80 equals 131. After deducting 9 in order to avoid counting twice those who signed both petitions there still remain 122. 80 is not ¾s of 122, and consequently the court cannot remove Fao from the title. Even if the court were to consider all 103 signers on the family's petition as

300

family members, still the 103 would not be ¾s of all the adult members of the family for then it would be necessary to add the remaining 51 of the family members for Fao which would make 154 and then deduct 9 because of the names on both petitions. 103 is not ¾s of the then remainder, 145. It should be understood, however, that the Court is not deciding that the 23 objected to by Fao are family members. In truth it believes in the light of all the evidence on the point that they are not.

While it should be understood that the decision in this case is based upon the fact that it appeared from the evidence that $^3/_4$s of the adult members of the family did not petition for Fao's removal as required by Sec. 934 nevertheless we shall make some comments upon the charges against Fao. There were six charges set out in the petition as follows:

"1. He has surveyed the family communal land without the knowledge and consideration of the family. This land was surveyed secretly.

2. He has secretly surveyed another piece of land with the desire of selling it to Mrs. Lina Knewbuhl. This was done without the knowledge of family but we do believe that he should assemble the family and discuss the problem. It is the Matai's duty to rule with a fair just hand and the members would serve him willingly and faithfully.

3. He has willed the family title of Fao to a man who is a stranger to the family, namely Samu Faamao of the village of Fagatogo. This man is far from being a direct descendant of the Title and the family of Fao. We therefore strongly object to this act for we have in the family and alive not only the male descendants as well. In other words we have the House of Lords as well as the House of Commons. We do believe that a matai has no authority to will a successor without, the knowledge and proper consideration of the descendants and members of the family. The family should discuss and consider a member who is capable of ruling the family.

4. He has disgraced the Title of Fao and the said Family. He once held the title of District Judge but was removed from the position

for being disloyal and unfaithful. This disloyalty, and unfaithfulness is now applied upon the family of Fao in the village of Iliili.

5. He is not capable of ruling the family any longer. He has no voice in the County of Tualauta and in the culture and customs of Samoa he is barred from any assembly of matais. In the village of Iliili the Title of Fao is not considered a Matai for a period of six years now, however, the Title of Fao is one of the leading Matais in Maopu and also in the village of Iliili.

6. Furthermore, the present Fao is now a very old man and has but one leg, he is therefore unable to achieve much not only for himself but for the welfare of the family and community."

■ With respect to the first charge, it appears that Fao had two adopted children. He feared that when he should die, they would be driven out of the family by the other members. Last year he had 7 or 8 acres of family land surveyed, presumably with the intention of offering it for registration in the names of the adopted children so that upon his death they would have some land on which to live and have plantations if they should be driven out of the family. It should be remembered that being legally adopted according to Samoan customs they would be family members just as much as any other members of the family and that they would have the same right to live on family lands after Fao's death as such other members of the family. Leasio, who was the first witness for the family, testified as follows:

"Q.   We would like to know more about this land business and I would like to ask you some questions. Did Fao pay for the survey?

A.   Yes.

Q.   Did he tell you what the purpose of making the survey was?

A.   He told the family the reason why he surveyed the land is to give it to his children.

Q.   Would there be anything wrong about his giving it to his children?

A.   Yes.

Q.   By his children you mean his own blood children or all the people of the family?

302

A.  He has no children only his adopted children and he told the family that he already registered that family under those adopted children name.

Q.  Did he consult with the family before he did this?

A.  Fao did sent for Tupua, Leao and Letoga and Letoga was not present.

Q.  Did they consent to his transferring the land to his adopted children?

A.  No.

Q.  Did they object?

A.  Yes.

Q.  When did this happen?

A.  Last year.

Q.  How large a piece of land was it?

A.  What Fao told the family members on the last meeting of August 29, 1946 that he guessed that it is around 7 or 8 acres."

If Leasio's testimony be true, and we have no reason whatever to doubt its truth, it appears that Fao frankly admitted to the family that he wanted to give some of the family land to his adopted children; that "Fao did sent for Tupua, Leao and Letoga and Letoga was not present," this in order that he might secure the consent of these lesser matais of the family to have the surveyed land registered in the name of his adopted children. When Tupua and Leao objected to such proposed transfer of the land to the children, Fao did not offer the land for registration. In fact he has never offered the land for registration.

Merely having the land surveyed and asking Tupua and Leao if they would approve his having it registered for his adopted children and never having offered the land for registration upon failing to get their consent in no way injured the family. Even if Fao had offered the land for registration as the property of the adopted children, any other member of the family could have objected to the proposed registration and the High Court would have heard the case. While the Court does not in any way approve the conduct of Fao in connection with this land, it is only fair to

say that he did nothing with respect to it which injured the family in any way.

With respect to the second charge that Fao "secretly surveyed another piece of land with the desire of selling it to Mrs. Lina Knewbuhl," it appeared that this culminated in a case in High Court which was heard in January 1939, Fao losing the case.

On the third charge Leasio testified as follows:

"Q. You state here in your petition something about his willing the title of the land to someone who was not in the family. Tell us about that if you can?

A. When Fao was admitted to the Hospital sick in 1945 my sister Pesa was taking care of him. At the time he was ill then Fao told Pesa personally when he dies Samu the son of Fia will be his successor.

Q. Were you present?

A. No.

Q. You do not know whether he told her that or not?

A. I do not but she told me."

Since the testimony of the witness was admittedly based not upon his own knowledge, but upon hearsay, we will not discuss the third charge other than to say that even if true, it did not injure the family since, of course, Fao could not will his title. Furthermore, if Fao did attempt to will his title, he was sick and believed he was about to die. A sick man who thinks he is on his death bed frequently says things he would not say if he were in good health.

The fourth charge grows out of the fact that more than 24 years ago, when Fao was a district judge, he and some other men sent some boys, who were working for the Government on the road, to fish for them with the result that the Government paid the boys for working on the road when they were fishing for Fao. This was serious misconduct on Fao's part for which he was fined and removed as a district judge.

The fifth charge, it appears, grows out of the fact that because Fao lost the High Court case in 1939, he was excluded from the deliberations of the Matais of his county.

The sixth charge is based upon the fact that Fao is now 80 years old and has only one leg. He has been the matai of the Fao family since before the Government was established in 1900.

The fact that Fao is 80 years old and has only one leg is no disgrace. Fao is merely fortunate in having had such a long life and is equally unfortunate in having lost a leg. The claim that he is "unable to achieve much not only for himself but for the welfare of the family and community" was not supported by any evidence introduced against Fao. If Fao is not looking after the affairs of the family, evidence could have been introduced to prove it. There was no such evidence.

If the family wanted Fao removed from the title because of his aforementioned misconduct while he was a district judge, it is peculiar that it has waited 24 years; also if they wanted him removed because he has been excluded from the county council since 1939, why did they wait until 1946 to prefer charges? Although it was not included in the charges filed, there was evidence introduced indicating that Fao had struck his sister about 10 years ago in Leone. Why the great delay in bringing all these matters up if they were considered of importance by the family?

█ When the family seeks the removal of Fao it invokes the equity jurisdiction of the court. There is a maxim of equity to the effect that "Equity aids the vigilant, not those who slumber on their rights." We regard the maxim as applicable to the second, fourth, and fifth charges in the petition and the additional charge that Fao struck his sister 10 years ago, since "It is by force of this principle that equity refuses to enforce demands which the party has unreasonably delayed in asserting." 21 Corpus Juris 193. It

305

will not be amiss to say that the testimony showed that the only real ground upon which the family bases its claim for removal is the first charge and that it does not regard the other charges as of any consequence.

The petition for removal of Fao V. as the matai of the Fao family of Iliili is hereby dismissed upon the ground that ³⁄₄s of the adult members of the family did not join in it as required by Section 934 of the A. S. Code.

Costs in the amount of $25.00 are hereby assessed against the Fao family, the same to be paid within 30 days.